Gants, J.
The plaintiff, Globe Newspaper Company, Inc. (“Globe”) has filed a complaint asking for the termination of the impoundment orders and the allowance of public inspection of the following five Suffolk County civil cases: 91-7517, 93-869, 94-4457, 94-2787, and 95-2096 (“the impounded cases”).[1] By Order of this Court dated December 6, 2001, all attorneys of record in the impounded cases were provided by the Suffolk County Superior Court Clerk’s Office with the Complaint, the Globe’s Motion to Terminate Impoundment Orders, the Globe’s Memorandum in Support of Motion to Terminate Impoundment Orders, as well as the Court’s Order itself, and invited to a hearing on December 14, 2001. Counsel for the plaintiffs and for most defendants in the impounded cases appeared at that hearing, but asked for additional time to respond to the Globe’s motion so that they could review the impounded court file, confer with (and in some cases locate) their clients, and submit legal memoranda. This Court agreed to their request, and held a further hearing on the Globe’s motion to terminate the impoundment orders on January 24, 2002. Having heard from all parties and examined the applicable law, this Court allows the Globe’s motion to the extent that the impoundment order as to Civ. No. 93-869 is vacated, and the impoundment orders as to Civ. Nos. 91-7517, 94-4457, 94-2787, and 95-2096 are modified to permit impoundment only of those portions of court records that either identify the plaintiffs by name or address, or that provide information that reasonably would permit them to be identified by someone who knows them or by someone willing to engage in investigation to determine their identity.
DISCUSSION
Background
Each of the five impounded cases concern allegations that members of the clergy sexually abused children.[2] None of the five cases were resolved through a trial; all appear to have been resolved through settlement. Nor, in any of the five cases, were any legal findings made as to the merits of the allegations. None of the five files contain any civil discovery.
In each of the five cases, there is a court order signed by a Superior Court judge directing the permanent impoundment of the entire file, issued upon the joint motion of all parties. Each court order makes rather generic findings in support of impoundment, which appear to have been proposed by the defendants and adopted by the Court.[3] Until now, none of the impoundment orders in any of these five cases had been challenged by any third party.
Under Rule 10 of the Uniform Rules on Impoundment Procedure (“the Uniform Rules”), “any interested third person” may move to modify or terminate an order of impoundment. There can be no doubt that the Globe, as the owner of The Boston Globe newspaper, is an “interested third person” with standing to bring this motion.
The Globe, although formally moving to terminate these impoundment orders, has essentially moved simply to modify them, since it has informed the Court that it “does not seek the identities of the plaintiffs who were the victims of the alleged sexual abuse.” Reply Memorandum of Globe at 4. None of the plaintiffs in the five impounded cases wish to make public their allegations of childhood sexual abuse. As a result, their attorneys unanimously oppose any modification of the impoundment order if it were to reveal the identity of their clients, or reveal enough information to permit either informed or inquisitive persons to determine the identify of their clients. If their clients’ identities remain concealed, the attorneys for the plaintiffs in two of the impounded cases do not oppose modification of the impoundment order. However, the attorney for the plaintiffs in three of the cases opposes any modification whatsoever. The individual defendants oppose any amount of modification to these impoundment orders. The attorney for the religious institution initially opposed any modification but, on January 31, 2002, informed the Court in writing that it was withdrawing its formal opposition to the Globe’s motion.
The Law Governing Impoundment of Court Papers
When a document in a court case is filed with the court, that document is presumptively available to the general public and the press as part of the general principle that judicial proceedings, both criminal and civil, are open to all. See generally Ottaway Newspapers, Inc. v. Appeals Court, 372 Mass. 539, 546 (1977); The Boston Herald, Inc. v. Sharpe, 432 Mass. 593, *317 603-11 (2000). Despite the “rigorous presumption of openness,” not every document filed in court need be made publicly available. The Boston Herald, Inc. at 608. As set forth in the Supreme Judicial Court’s Uniform Rules, "(a]n order of impoundment may be entered by the court, after hearing, for good cause shown and in accordance with applicable law.” Uniform Rules, Rule 7. The Uniform Rules do not define “good cause,” but they do identify certain “relevant factors”"the nature of the parties and the controversy, the type of information and the privacy interests, the extent of community interest, and the reason(s) for the request." Id. The agreement of the parties is not sufficient, by itself, to constitute good cause for impoundment. Id.
For all practical purposes, the issues before this Court are essentially threefold:
Is there “good cause” to impound information in court documents that would reveal the identity of a plaintiff who has alleged in a civil action that he was sexually abused as a child by a member of the clergy but who dearly wishes to keep his victimization private?
Is there “good cause” to impound information in court documents that would reveal the identity of a religious institution or senior clergy in that institution who are not alleged to have committed sexual abuse themselves but are named as defendants either on a claim of vicarious liability or negligent supervision?
Is there “good cause” to impound information in court documents that would reveal the identity of a person who is alleged, when he was a clergyman, to have sexually abused a child?
Before attempting to answer any of these questions, it is important first to attempt to give greater definition to the term “good cause.”
Good Cause
The presumption that court records in civil proceedings are available to the general public and the press is rooted in the common law. See The Boston Herald, Inc. v. Sharpe, 432 Mass. at 605-06. Under the common law, “the presumption of access” permits the press and the general public to obtain a full understanding of the civil proceeding and therefore allows them to serve as an effective check on the fairness of the judicial system. The Boston Herald, Inc. at 606; Nixon v. Warner Communications, Inc., 435 U.S. 589, 597-598 (1978). The public’s interest in access to information and the beneficial effects of publicity may be as strong or stronger in some civil cases than in many criminal cases. Gannett Co. v. DePasquale, 443 U.S. 368, 386-87 n. 15 (1979). In other words, the law gives the public a presumptive right of access to all documents filed with the court because the right to a public trial is one of the means devised to ensure the right to a fair trial, and the public often needs access to the court papers to determine whether a trial has been conducted fairly.
There is also a presumption of public access to court records in criminal cases under the First Amendment to the United States Constitution when the criminal proceedings have “an historic tradition of openness” and the public’s access will play “a significant positive role in the functioning of the particular process in question.” The Boston Herald, Inc. v. Sharpe, 432 Mass. at 606, quoting Newspapers of New England, Inc. v. Clerk-Magistrate of the Ware Div. of the Dist. Court Dep’t, 403 Mass. 628, 635 (1988), which quotes Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 8 (1986). The rationale for a right of access under the First Amendment is similar to the rationale for the right of access under the common law"a major purpose of that Amendment was to protect the free discussion of governmental affairs" and a right of access ensures “that this constitutionally protected ‘discussion of government affairs’ is an informed one.” Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 604-05 (1982), quoting Mills v. Alabama, 384 U.S. 214, 218 (1966).
In Sharpe, the Supreme Judicial Court extended the constitutional right of access to court records in criminal cases to civil cases under G.L.c. 209A involving domestic violence. Id. at 606-07. Applying its two-part test, the Supreme Judicial Court found that G.L.c. 209A proceedings met the first testthat they had “an historic tradition of openness”as well as the second testthat public access will play “a significant positive role in the functioning of the particular process in question.” id. The argument in favor of a constitutional right of public access is equally compelling in civil cases, like those here, involving the alleged sexual abuse of children. Tort actions in Superior Court involving such allegations, like G.L.c. 209A hearings, have historically been open to the public and public access to these tort actions, especially when they involve allegations of sexual abuse by members of the clergy, will play as significant a positive role in the functioning of our courts as in cases alleging domestic abuse. Therefore, this Court finds that the presumption of public access to court records in these civil actions alleging sexual abuse of children by members of the clergy is based not only on the common law but also on the First Amendment.
The presumption of openness, whether founded on the common law or the First Amendment, is not absolute. The Boston Herald, Inc. v. Sharpe, 432 Mass. at 604. “[A] court possesses ‘inherent equitable power to impound its files in a case and to deny public inspection of them . . . when justice so requires.’ ” Id., quoting George W. Prescott Publ. Co. v. Register of Probate for Norfolk County, 395 Mass. 274, 277 (1985), which quotes Sanford v. Boston Herald-Traveler Corp., 318 Mass. 156, 158 (1945). In drafting the Uniform Rules, the Supreme Judicial Court has essentially *318 determined that “justice so requires” when there is a finding of “good cause.” Uniform Rules, Rule 7.
Closing a court record is analogous to closing a courtroom during a trialboth deny the public a right of access to see what is happening in a judicial case and both restrictions are of constitutional dimension. The United States Supreme Court has declared that denial of the right of access to a courtroom to protect the disclosure of sensitive information requires a showing of “overriding interest based on findings that closure is essential to preserve higher values, and is narrowly tailored to serve that interest.” Press-Enterprise Co. v. Superior Court of California, 464 U.S. 501, 509 (1984). See also Globe-Newspaper Co. v. Superior Court, 457 U.S. at 607 (in criminal case, to justify closure of a courtroom, the government must show that “denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve the interest”). While the “interest” warranting closure may need to be greater in closing a courtroom than in closing a court record, the analytical standard for balancing such an “interest” against the presumption of public access need not be (and should not be) any differentthe “interest” must be compelling and the remedy narrowly tailored to serve that interest. The Supreme Judicial Court has recognized that this standard is equally appropriate in evaluating a claim of closure of court records, as it is a claim of closure of a courtroom. In George W. Prescott Publ. Co. v. Register of Probate for Nofolk County, in considering whether public records in a divorce case should be impounded under the “good cause” requirement of the Massachusetts Rules of Domestic Relations Procedure, the Court concluded “that the documents at issue here may only be impounded on a showing of overriding necessity, which is based on specific findings,” citing Press-Enterprise Co. v. Superior Court of California, 395 Mass. at 279.[4] See also Globe Newspaper Co. v. Pokaski, 868 F.2d. 497, 505 (1989) (adopting “as the appropriate standard the traditional compelling interest/least restrictive means test” to its analysis as to whether to close criminal court records).
The Supreme Judicial Court has also required that any order of impoundment be narrowly tailored to meet the overriding interests that justified impoundment. “If there is good cause to impound documents, a judge is required to tailor the scope of the impoundment order so that it does not exceed the need for impoundment.” The Boston Herald, Inc. v. Sharpe, 432 Mass. at 605.
The meaning of “good cause” to impound must be understood in light of this compelling interest/narrowly tailored standard. Indeed, it is important to remember that Rule 7 of the Uniform Rules permits an order of impoundment “for good cause shown and in accordance with applicable law.” Uniform Rules, Rule 7 (emphasis added). In adding this second clause, the Supreme Judicial Court acknowledged that the meaning of “good cause” must be consistent with the common law and constitutional presumption of openness injudicial proceedings. Consequently, the meaning of “good cause” must reflect the constitutional rights at stake in closing court records to the public, and the strict standard that must be met to override those constitutional rights.
The mere potential for “embarrassment” or the fear of “unjustified adverse publicity” is not sufficient to show good cause. George W. Prescott Publ. Co. v. Register of Probate for Norfolk County, 395 Mass. at 279. Rather, the Supreme Judicial Court has generally focused on the degree to which the information sought to be impounded, if revealed in public court records, would invade the legitimate expectation of privacy that litigants or other persons have in matters that are intensely personal and private. See The Boston Herald, Inc. v. Sharpe, 432 Mass. at 612 (finding no "invasion of privacy” in the release of the information in court records); H.S. Gere & Sons, Inc. v. Frey, 400 Mass. at 330 (affirming impoundment when the nature of the information was intensely personal and within a legitimate expectation of privacy); George W. Prescott Publ. Co. v. Register of Probate for Norfolk County, 395 Mass. at 278-79 (distinguishing between the legitimate expectation of privacy of a private person and a public official).
When one looks closer at the Supreme Judicial Court’s analysis, it emerges that the Court has understood the otherwise circular concept of legitimate expectation of privacy to refer to private information that, if revealed publicly, would properly constitute a violation of the common law tort of invasion of privacy or statutory entitlements to privacy. That is why the Supreme Judicial Court in Sharpe focused on its finding that revelation of the information at issue in that case would not constitute an “invasion of privacy,” and cited Section 652D of the Restatement (Second) of Torts, which defines the tort of “publicity given to private life” as follows:
One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.
Restatement (Second) of Torts, §652D. See also George W. Prescott Publ. Co. v. Register of Probate for Nofolk County, 395 Mass. at 278 (quoting comment d from Restatement (Second) of Torts, §652D). That is also why the Supreme Judicial Court in George W. Prescott Publ. Co. refused to impound private information in a divorce case in which the husband at the time held two public positionsTreasurer of Norfolk County and Chairman of the Norfolk County Retirement Board. The Court concluded that the information was indeed so sensitive that it would likely be impounded if only private citizens were involved, but refused to impound *319 it because the public position of the husband made information regarding his personal finances of legitimate concern to the public. 395 Mass. at 278-79. Indeed, the Court concluded that “the public has a vital interest in full disclosure of all information which is relevant to his alleged misuse of authority.” 395 Mass. at 279.
Viewing “good cause” through this prism clarifies why the Supreme Judicial Court in the Uniform Rules identified certain factors as being relevant to the determination of “good cause.” The factor"nature of the parties and the controversy"focuses on whether the information is of legitimate concern to the public, either because a party is a public official, as in George W. Prescott Publ. Co., or the controversy involves matters of legitimate public concern, such as spousal abuse, as the Court found in Sharpe. The factor"the type of information and the privacy interests involved"focuses on the extent to which the information is intensely personal and, if revealed, likely to cause emotional or psychological distress or harm. The factor"the extent of community interest'Tocuses not only on whether the matter is of legitimate concern to the public but also on whether the information (or comparable information) has already been publicly revealed in some fashion. See Sharpe at 612 (focusing on the already extensive media coverage of the case).
Is there “good cause” to impound information in court documents that would reveal the identity of a plaintiff who has alleged in a civil action that he was sexually abused as a child by a member of the clergy but who dearly wishes to keep his victimization private?
There can be little doubt that, if a person were publicly to reveal that a particular child had been sexually abused, that child (through his parents or legal guardian) may have a cause of action against that person under G.L.c. 214, §1B for an “unreasonable, substantial or serious interference with his privacy.” Cf. Doe v. Town of Plymouth, 825 F.Sup. 1102 (D.Mass. 1993) (disclosure of HIV status may give rise to civil cause of action). Various statutes protect the privacy of a child from public revelation of his sexual abuse. Reports to the Department of Social Services of child sexual abuse required to be made under G.L.c. 119, §51 A, by professional persons in designated professions are kept confidential and maybe made available only with the approval of the Commissioner of the Department or upon court order. G.L.c. 119, §5ID. Where a minor has gone to court to obtain a court order under G.L.c. 209A to restrain another person from continuing to sexually abuse him, the minor plaintiffs name and address and the case record are impounded unless a court orders otherwise. G.L.c. 209A, §8. Police records regarding alleged sexual assaults, whether against a minor or an adult, are not public records. G.L.c. 41, §97D.
The legislative purpose is manifestfor many victims of sexual abuse, especially child sexual abuse, public revelation of the abuse, if not sought by them, victimizes them yet again. It stigmatizes them as victims of such abuse, generates conversations that may re-open emotional wounds that had only begun to heal, and causes others, even those who mean well, to treat them differently. If the identity of these victims are not protected by the courts, then their access to the courts will be severely diminished, because they will not be able to turn to the courts for relief from or compensation of their emotional injuries without aggravating those same injuries. See Doe v. Bell Atlantic Systems Services, Inc., 162 F.R.D. 418, 420 (D.Mass. 1995) (observing how, in some cases, “the injury litigated against would occur as a result of the disclosure of plaintiffs identity”). Therefore, this Court finds that the plaintiffs in the impounded cases, as the alleged victims of sexual abuse when they were children, have a compelling interest in preventing public disclosure of their identities.
Protecting these alleged victims’ compelling interest in privacy, however, does not require impoundment of the entire court file; it simply requires impoundment of their names and of any information that may reasonably be used to identify them. The use of a pseudonym has been permitted in cases when, because of the risk of social stigmatization, the danger of physical harm, or the potential for psychological injury, the plaintiff wishes to avoid revealing his or her identity in public court records. See generally id. Indeed, in one of the most famous cases of the last fifty yearsRoe v. Wade, 410 U.S. 113 (1973)the Supreme Court allowed the plaintiff to use a pseudonym so that she was not identified as having sought an abortion.
Where the plaintiff moves at the commencement of the action to use a pseudonym, the logistics of accommodating this request are relatively simple. Since a request to use a pseudonym is essentially a request for prospective impoundment, the case file remains public except for the affidavit in support of the motion to use a pseudonym that identifies the plaintiff by name. Once the motion is granted, all parties know to take pains to avoid, when they can, identifying the plaintiff by name in court papers or including information that may identify the plaintiff. When they cannot, they know to request impoundment of the particular court document and, perhaps, to include in the public file a redacted version. When, as in three of the impounded cases, no motion was made to use a pseudonym, the logistics become more difficult, since the court must redact every document in the case file to eliminate identifying information, impound the unredacted documents as part of the original case file, and create a separate redacted case file that can be made available to the public.
*320 Is there “good cause” to impound information in court documents that would reveal the identity of a religious institution or senior clergy in that institution who are not alleged to have committed sexual abuse themselves but are named as defendants either on a claim of vicarious liability or negligent supervision?
While the defendant religious institutions and senior clergy successfully obtained orders of impoundment in each of the five impounded cases, they have provided this Court with no justification as why they are entitled to such an impoundment apart from the fact that they are the beneficiaries of the earlier orders. As then-Superior Court Justice James McHugh wrote in denying a motion brought by the Catholic Archdiocese of Boston and His Eminence Bernard Cardinal Law to impound the pleadings revealing Cardinal Law’s status as a defendant in the many cases alleging sexual abuse by Father John Geoghan:
The allegations with respect to Cardinal Law involved alleged deficiencies in executing alleged supervisory responsibilities. There is not even the remotest suggestion of anything else. Failure to execute administrative responsibilities properly is not the kind of allegation that typically warrants impoundment and defendants have suggested no persuasive reason why the typical approach should be altered here.
Memorandum and Order on Defendant’s Motion to Impound, Demeo v. Fr. John G. Geoghan et al., Suffolk Civ. No. 99-3170 (January 5, 2001) at 4. Impoundment as to these defendants can be justified only by the risk of embarrassment and adverse publicity, and such concerns, by themselves, never demonstrate “good cause.” George W. Prescott Publ. Co. v. Register of Probate for Norfolk County, 395 Mass. at 279. Therefore, it is not surprising that, one week after the second hearing, the attorney for the religious institution withdrew his opposition to the Globe’s motion.
Is there “good cause” to impound information in court documents that would reveal the identity of a person who is alleged, when he was a clergyman, to have sexually abused a child?
In considering whether there is “good cause” to continue to protect from public disclosure the identity of the clergymen alleged in these five impounded cases to have sexually abused children, I accept three propositions as true. First, in all five of the impounded cases, neither a judge nor a jury made any findings as to whether any of the defendant clergyman in fact did or did not sexually abuse the plaintiff children as alleged. Nor did any of the clergymen make any admission of responsibility in any court record in these cases. Four of the five cases were resolved through a stipulation of dismissal, apparently following a settlement; the fifth was filed simply for the purpose of obtaining judicial approval of a settlement involving a minor that had been reached before the complaint was filed. Therefore, in all five of these cases there are allegations of sexual abuse in the plaintiffs’ complaints but nothing that allows any impartial observer to determine the merits of those allegations.
Second, regardless of the actual merits of these allegations, the disclosure of the names of these defendants will have a devastating impact on their reputations and their lives. The Boston Globe and Boston Herald have published many articles recently examining allegations and, at times, admissions of child sexual abuse by members of the Catholic clergy in this Commonwealth. This Court has no doubt that, if this Court were to vacate or modify the orders of impoundment so as to reveal the identities of these clergy defendants, their names and the allegations against them in the complaints will be in both the Globe and the Herald within 48 hours. This Court acknowledges that the lives of these defendants will likely never be the same. The stigma of being accused of child sexual molestation, especially as a clergyman, will live with these men and haunt them until the day they die.
Third, the most recent of the five impounded cases was resolved five years ago, without a trial.
In view of these three truths, this Court recognizes that these clergy defendants justly can claim that they have a strong interest in continuing to impound their case files, at least to the extent of permitting them to use a pseudonym. Yet, this Court does not find that their interest in remaining anonymous is so compelling as to override the presumption of public access to these court records. Looking at the relevant factors suggested by the Supreme Judicial Court, this Court finds that the sexual abuse of children by members of the clergy is, quite properly, a matter of immense public concern and of enormous community interest. The public, especially those who belong to the same religious institution as the defendants, have a valid interest in knowing which members of their clergy have been accused of sexual abuse in a civil action in Massachusetts, and what steps, if any, have been taken by that religious institution in the face of these allegations. Protecting the identity of these defendant clergymen would effectively bar the public and their former congregants from knowing who these clergymen are and what has happened to them.[5] It would also make it far more difficult for members of the public to evaluate whether their religious institution and its leadership have acted responsibly in responding to these allegations.
Focusing on the privacy interests alleged, this Court recognizes that, while courts sometimes protect the privacy rights of victims and allow them to use a pseudonym!, courts almost never find privacy rights in the alleged victimizers and allow them to proceed with a pseudonym. See Doe v. Diocese Corporation, 43 Conn.Sup. 152, 647 A.2d 1067, 11 Conn. L. Rptr. 519 (Superior Ct. Conn. 1994) (forbidding the use of a *321 pseudonym by a clergy defendant accused in a civil action of child sexual abuse). Certainly, defendants in criminal cases are virtually never permitted to proceed with a pseudonym, even though their reputations, too, maybe devastated by the indictment regardless of the verdict. See U.S. v. Maling, 737 F.Sup. 684, 705-06 (D.Mass. 1990) (denying defendant’s request to substitute a name other than his own and declaring, “The defendant must live with his name and its attendant reputation”). But see United States v. Doe, 655 F.2d 920, 922 n. 1 (9th Cir. 1981) (permitting defendant to use pseudonym when he faces a risk of serious bodily harm if his cooperation with the government were to become known). The primary difference between the privacy interests of plaintiffs and defendants in cases alleging sexual abuse is that, for a plaintiff, the stigma and other problems that arise from revelation of his identity remain even after he prevails at trial. For a defendant, vindication at trial may not entirely obliterate the memoiy of the stigma, but it will certainly diminish its force.
Conclusion
This Court finds that, apart from the interests of the plaintiffs in protecting disclosure of their identities, there is no interest so compelling as to override the common law and constitutional presumption of public access to court records. Therefore, the orders of impoundment in four of the impounded casesSuffolk Civ. Nos. 91-7517, 94-4457, 94-2787, and 95-2096are hereby modified to permit impoundment only of those portions of court records that either identify the plaintiffs by name or address, or that provide information that reasonably would permit them to be identified by someone who knows them or by someone willing to engage in investigation to determine their identity. The order of impoundment in the fifth impounded caseSuffolk Civ. No. 93-869is hereby vacated, because it was filed with the plaintiff using a pseudonym and there is nothing in the file that would identify the plaintiff, so no redaction is necessary.
To accomplish this result, this Court has caused the impounded files to be copied, except for Suffolk Civ. No. 93-869, and has caused the tape recordings of hearings in Civ. Nos. 91-7517 and 94-4457 to be transcribed. The Court has personally redacted with a black magic marker those portions of the court documents and the transcripts that would reveal the plaintiffs’ identify (“the original redactions”), and has made a copy of these redacted files (“the redacted copy”). The original redactions shall be placed in the original files in these four cases (since one might still be able to see the names through the magic marker), and the original files shall remain impounded. The redacted copies shall be placed in new redacted files, marked by the appropriate civil number and the word “REDACTED” (for instance, No. 91-7517-RE-DACTED). Only the redacted files shall be made available to the public.[6] For each of the cases that were filed with the plaintiff using his true nameSuffolk Civ. Nos. 91-7517, 94-4457, and 94-2787a new docket shall be prepared by the Clerk of Court replacing the name of the plaintiffs in all instances with a pseudonym, e.g. John Doe.
To ensure that the redactions adequately protect the identity of the plaintiffs, this Court will stay this Order until February 15, 2002. Counsel for each plaintiff in the impounded cases, through arrangement with the Assistant Clerk, may review the redacted file in his case to see the proposed redactions and, no later than February 12, 2002, may file written objections to the manner in which the redactions have been made, with specific requests for additional redactions.
ORDER
After hearing, for the reasons detailed above, this Court hereby ORDERS that the Globe’s motion is ALLOWED to the extent that:
The orders of impoundment in four of the impounded casesSuffolk Civ. Nos. 91-7517, 94-4457, 94-2787, and 95-2096are hereby modified to permit impoundment only of those portions of court records that either identify the plaintiffs by name or address, or that provide information that reasonably would permit them to be identified by someone who knows them or by someone willing to engage in investigation to determine their identity. The order of impoundment in the fifth impounded caseSuffolk Civ. No. 93-869is hereby vacated, because it was filed with the plaintiff using a pseudonym and there is nothing in the file that would identify the plaintiff, so no redaction is necessary.
To accomplish this result, this Court has caused the four original files in Suffolk Civ. Nos. 91-7517, 94-4457, 94-2787, and 95-2096 to be copied, and has caused the tape recordings of hearings in Civ. Nos. 91-7517 and 94-4457 to be transcribed. The Court has personally redacted with a black magic marker those portions of the court documents and the transcripts that would reveal the plaintiffs’ identify (“the original redactions”), and has made a copy of these redacted files (“the redacted copy”). The original redactions shall be placed in the original files in these four cases (since one might still be able to see the names through the magic marker), and the original files shall remain impounded.
The redacted copies shall be placed in new redacted files, marked by the appropriate civil number and the word “REDACTED” (for instance, No. 91-7517-RE-DACTED). Only the redacted files shall be made available to the public.
For each of the cases that were filed with the plaintiff using his true nameSuffolk Civ. Nos. 91-7517, 94-4457, and 94-2787a new docket shall be prepared by the Clerk of Court replacing the name of *322 the plaintiffs in all instances with a pseudonym, e.g. John Doe.
This Order is stayed until February 15,2002. Counsel for each plaintiff, through arrangement with the Assistant Clerk, may review the redacted file in his case to see the proposed redactions and, no later than February 12, 2002, may file written objections to the manner in which the redactions have been made, with specific requests for additional redactions.
The Clerk of Court shall cause this Memorandum and Order to be delivered forthwith, by first class mail or other appropriate means, to all counsel of record in this case and in the impounded cases.
A copy of this Memorandum and Order shall also be placed in the case file of each of the impounded cases.

 Initially the Globe asked to terminate the impoundment orders in nine casesthe five identified above, as well as Civ. Nos. 94-5409, 98-5840, 99-676, and 94-5821: At the initial hearing, however, the Globe withdrew its request as to Civ. No. 94-5409. This Court referred the Globe’s motion as to Civ. Nos. 98-5840 and 99-676 to Associate Justice Constance Sweeney, since all civil cases involving a defendant in these two cases had been specially assigned to her by Chief Justice Suzanne DelVecchio. The Globe withdrew its request as to Civ. No. 94-5821 once it learned from the Court that this case involved an allegation of sexual harassment by one adult against another, and not a claim of child sexual abuse by a member of the clergy.

 One of the impounded casesCiv. No. 94-4457is a complaint for settlement approval on behalf of a minor, but the settlement resolves allegations involving sexual abuse of a child by a member of the clergy.

 This Court makes that inference because many different judges issued these findings but the language was nearly identical in all the findings. Since the plaintiffs and plaintiffs’ counsel differed among these cases but all five cases had one defense counsel in common, it is reasonable to infer that this defense counsel submitted the proposed language for the impoundment orders. I was not the judge in the any of the five impounded cases.

 This Court recognizes that the Supreme Judicial Court, in a footnote in H.S. Gere & Sons, Inc. v. Frey, 400 Mass. 326, 330 n. 8 (1987), declared that the standard of overriding necessity was applied in George W. Prescott Publ. Co. only because that case involved a public official. As discussed below, infra at pages 8-9, impoundment was ordered in H.S. Gere & Sons, Inc. and rejected in George W. Prescott Publ. Co., not because the analytical standard was different in these two cases but because the public had a strong interest in the latter case to examine the court records to explore a possible misuse of authority by a public official. Since the public official’s records were of such substantial legitimate concern to the public, the privacy interest that would be needed to override the public’s interest and justify impoundment would have had to be unusually formidable, which it was not in that case.

 This Court has been told that the clergy defendants no longer hold pastoral positions, but has no independent knowledge as to whether this is true. Indeed, this Court does not know where the individual defendants are now, what they are doing for a living, or even if they are still alive.

 Civ. No. 95-2096 was filed with the plaintiff using a pseudonym, so the only document in that file that required redaction was the plaintiffs affidavit in support of his use of a pseudonym, which now has been redacted.